1           IN THE UNITED STATES COURT OF FEDERAL CLAIMS

2

3

4    PALANTIR TECHNOLOGIES, INC.,            )

5    and                                     ) Case No.

6    PALANTIR USG, INC.                      ) 16-784C

7              Plaintiffs,                    )

8                    vs.                      )

9    THE UNITED STATES OF AMERICA,           )

10             Defendant.                     )

11

12

13                      Courtroom 6

14         Howard T. Markey National Courts Building

15               717 Madison Place, N.W.

16                  Washington, D.C.

17                Friday, July 1, 2016

18                     3:14 p.m.

19                 Initial Conference

20

21

22         BEFORE: THE HONORABLE MARIAN BLANK HORN

23

24

25   Elizabeth M. Farrell, CERT, Digital Transcriptionist

Palantir Technologies, Inc. v. USA                              7/1/2016

```
 1    APPEARANCES:

 2    ON BEHALF OF THE PLAINTIFFS:

 3            HAMISH HUME, ESQ.

 4            STACEY GRIGSBY, ESQ.

 5            Boies Schiller & Flexner LLP (DC)

 6            5301 Wisconsin Avenue, NW

 7            Suite 800

 8            Washington, DC 20015

 9            (202) 220-9600

10            hhume@bsfllp.com

11

12

13    ON BEHALF OF THE DEFENDANT:

14            SCOTT A. MACGRIFF, ESQ.

15            DOUGLAS K. MICKLE, ESQ.

16            U.S. Department of Justice

17            Post Office Box 480

18            Ben Franklin Station

19            Washington, DC 20044

20            (202) 307-1111

21            scott.macgriff@usdoj.gov

22

23    ALSO PRESENT:

24        Colonel Frank Marsh, Retired, U.S. Army

25
```

Palantir Technologies, Inc. v. USA                    7/1/2016

```
 1              P R O C E E D I N G S
 2                  -   -   -   -   -
 3          (Proceedings called to order, 3:14 p.m.)
 4          THE COURT:  The case on the docket is Palantir
 5  Technologies, Inc. against the United States, Case Number
 6  16-784C.  And this is the initial conference in this bid
 7  protest filing, which we received yesterday afternoon.
 8              Let's see who we have here in the courtroom.
 9  And if either of you claim the gentleman in the back,
10  claim him and tell me who he is.  If not, we'll find out.
11  Let's start with the Plaintiff.
12          MR. HUME:  Good afternoon, Your Honor.  My name
13  is Hamish Hume from Boies Schiller & Flexner,
14  representing the Plaintiff, Palantir.  And with me today
15  is my colleague, Stacey Grigsby, also from Boies
16  Schiller.
17          MS. GRIGSBY:  Good afternoon, Your Honor.
18          THE COURT:  Okay, thank you.
19          MR. HUME:  Thank you.
20          THE COURT:  And Defendant?
21          MR. MACGRIFF:  Your Honor, Scott MacGriff on
22  behalf of the United States.  Domenique Kirchner, my
23  colleague at the Department, will be the lead counsel in
24  this case.  She is away on family business this weekend.
25  She will be back on Tuesday.  And I'm filling in for the
```

Palantir Technologies, Inc. v. USA                        7/1/2016

1    time being.

2              With me at the table, I have Doug Mickle from

3    our office.  I also have Colonel Frank Marsh, Retired,

4    from the Army, who represents the agency.

5              THE COURT:  And that means that other than the

6    people who walked in the door with me who are my interns

7    -- go ahead and sit down -- we need to know who you are,

8    sir?

9              MR. HARRIS:  Good morning, Your Honor.  Andrew

10   Harris, Bloomberg News.  I'm their local legal affairs

11   reporter.

12             THE COURT:  All right.  And I don't know,

13   perhaps counsel can tell me, is there anything in here

14   that's privileged or protected?

15             MR. HUME:  Your Honor, we wanted to address

16   that with you at the threshold.  The Plaintiff does not

17   believe there's anything in the complaint that is

18   protected, classified or confidential and, therefore, we

19   filed a -- as Your Honor knows, not under seal, but

20   normally on the public docket.

21             THE COURT:  What about the GAO protected

22   material?

23             MR. HUME:  We don't have access -- we at Boies

24   Schiller and the Palantir people do not have access to

25   anything that was redacted in the GAO record.  Prior

Palantir Technologies, Inc. v. USA                    7/1/2016

1   counsel at Coie did, but they did not provide that to us
2   or to the client.  Having said all that, Your Honor, we
3   do strongly feel that there is nothing protected or
4   confidential, let alone class --
5           THE COURT:  Well, you can't know if you haven't
6   seen it.
7           MR. HUME:  Well, we do know -- we know that
8   what we've seen was not redacted because we saw
9   redactions and we didn't see what was behind the
10  redactions.
11          THE COURT:  Right.  That's what I'm saying.
12          MR. HUME:  So, the only thing we can --
13          THE COURT:  I think we'll turn to the
14  Defendant.
15          MR. HUME:  Well, I want to -- obviously, you
16  should hear from the Defendant.  They did alert us an
17  hour or so ago that they think there are protected
18  materials and we do want, in an abundance of caution, to
19  agree with them to seal the complaint until we can sort
20  that out.
21          THE COURT:  All right.  And, of course, sealing
22  the complaint is one thing; sealing the administrative
23  record is a wholly different thing because there is
24  evaluation material undoubtedly that's going into it.  So
25  -- but let me address -- go ahead and sit down.

Palantir Technologies, Inc. v. USA                      7/1/2016

1           Let me address -- before you get up, Mr.
2   MacGriff or Mr. Mickle.  I appreciate you all being here.
3   I did express to Mr. Kirschman yesterday that I was
4   somewhat appalled by the fact that an attorney who has
5   bid protest duty two weeks a year, which is a little
6   significantly less than what we do, was absent for a bid
7   protest that came in.  And I'm sure you all can handle it
8   just fine, but I will not entertain any excuses that Ms.
9   Kirchner missed something or wasn't here.
10          MR. MICKLE:  Your Honor, may I speak --
11          THE COURT:  It's an interesting way to operate.
12          MR. MICKLE:  That is totally on me.  I run the
13  bid protesting as you know.  Mr. MacGriff is co-counsel.
14  We assigned, actually, two counsel on this case.
15          THE COURT:  We only have one lead issued,
16  though, in our Court.
17          MR. MICKLE:  But one lead.  We expected this to
18  be filed next week.  She had some family matters she had
19  to take care of.  I instructed her to go on leave because
20  I wanted her to take care of those because --
21          THE COURT:  Well, then I should be talking to
22  you and not Mr. Kirschman.
23          MR. MICKLE:  Yes, I'm on the blame line, and
24  Domenique knows that and I actually -- I think she would
25  have tried to come back from where she's at to --

Palantir Technologies, Inc. v. USA                              7/1/2016

```
 1              THE COURT:  We'll get through it.  I just -- I
 2   was very surprised.  That's all I'm saying.
 3              MR. MICKLE:  She's also a member of the team,
 4   Your Honor.  Just for clarification, the two-week periods
 5   or two-week periods for regular line attorneys twice a
 6   year, Domenique, as a protest team member, is subject to
 7   bid protest duty throughout the year and gets -- handles
 8   four or five a year.
 9              THE COURT:  I'm so impressed.  Do you know that
10   I got two -- at the end of week, I have just gotten two,
11   so --
12              MR. MICKLE:  I think there might be some more
13   coming if the 24-hour notices are any --
14              THE COURT:  That's right.
15              (Pause in the proceedings.)
16              THE COURT:  Okay.  Let's deal with protected
17   matters, and I know the GAO takes very seriously their
18   protective guidance and when they protect material.
19   We've run into that on a couple of occasions, and I know
20   some of my colleagues on the Federal District Court bench
21   have gotten hammered on that basis.  And, actually, the
22   people who get into real trouble are the attorneys, not
23   so much the judge.  So, we have to be cognizant of the
24   GAO protections that have been put in place.
25              So, talks to me about whether this needs to be
```

Palantir Technologies, Inc. v. USA                                    7/1/2016

1    under seal and whether particularly the administrative

2    record -- I mean, we can split it obviously.  We can

3    leave the -- until we're done, call Debbie and tell her

4    to seal it while we're talking and then we can unseal it.

5            Do you -- the complaint, is there anything in

6    the complaint that needs to be sealed?

7            MR. MACGRIFF:  Your Honor, Army counsel

8    notified me earlier this afternoon that there is

9    information in the complaint that was protected in the

10   GAO record --

11           THE COURT:  Okay.

12           MR. MACGRIFF:  -- as well as some other

13   information that might cause some problems.

14           THE COURT:  All right.  Give us a second.

15           MR. HUME:  And, Your Honor, just so it's clear,

16   we are consenting to the sealing under the understanding

17   that it's without prejudice to revisiting that because we

18   don't think anything --

19           THE COURT:  We can always revisit it.

20           MR. HUME:  Thank you, Your Honor.  That's fine.

21           MR. MACGRIFF:  And we will provide the redacted

22   copies once the (inaudible).  This is out of an abundance

23   of caution.

24           THE COURT:  I don't know what you're doing in

25   the back there, but get off of your PDA.

Palantir Technologies, Inc. v. USA                                      7/1/2016

```
 1                    UNIDENTIFIED MALE:  Me?
 2                    THE COURT:  Yes.  Okay.  Okay, good.  Just
 3      taking notes?
 4                    UNIDENTIFIED MALE:  Yes, that's it.
 5                    THE COURT:  That's fine.  The old-fashioned
 6      way?
 7                    UNIDENTIFIED MALE:  Pardon me?
 8                    THE COURT:  The old-fashioned way?
 9                    UNIDENTIFIED MALE:  Yeah.
10                    THE COURT:  That's fine.
11                    UNIDENTIFIED MALE:  Your Honor, respectfully, I
12      do this for a living.  Getting thrown out of courts --
13                    THE COURT:  I don't throw anybody out of court.
14                    UNIDENTIFIED MALE:  I fear that may happen soon
15      here.
16                    THE COURT:  I do not throw anybody out of
17      court.  We have issues which you I'm sure understand in
18      terms of sealing information that's protected,
19      particularly in an evaluation case and that's what we're
20      trying to sort out now.  So, until we sort it out, we're
21      going to seal it, and at the point that we all determine
22      that it is something that ought to remain sealed, it will
23      remain sealed.  And you can sit down.  And if it -- go
24      ahead and sit down, sir, please.
25                    If it should not be sealed, we will open it up.
```

Palantir Technologies, Inc. v. USA                    7/1/2016

1    The presumption in every court is that everything's in
2    the public record unless there's a reason to seal it.
3    So, we're working on a presumption of openness and we're
4    not looking to throw anybody out, we're simply looking to
5    preserve the competitive process in the way that the
6    regulatory scheme says that it should be protected and
7    also have due deference to our sister at the GAO -- our
8    sister agency at the GAO.  We work in tandem on issues of
9    protection and I don't want to see any attorneys get into
10   trouble, and they do.  They get barred from GAO pretty
11   quickly if, in fact, they violate the GAO protective
12   orders.  And, so, that's all we're trying to sort
13   through.
14          MR. HUME:  Your Honor, may I be heard just for
15   one moment on that point?
16          THE COURT:  I don't think you need to be heard
17   on that point at this point.  We're sorting through it.
18          Okay, all right.  So, we've sealed the
19   complaint temporarily and we'll go on from there.  I
20   would say to the Department of Justice folks, please take
21   a hard look, Mr. MacGriff and Mr. Mickle.  I'm not
22   questioning that the Army didn't also take a hard look.
23   I'm sure you did.  But take a hard look and make sure
24   that, in fact, this should be sealed or -- and if not, we
25   will want from you, after consultation with the

Palantir Technologies, Inc. v. USA                    7/1/2016

1      Plaintiff, a redacted version very quickly, namely by

2   probably Wednesday of next week, midday Wednesday of next

3   week, and that way we can conform with our obligation to,

4   in fact, go forward with as much in the public domain as

5   we can.

6           I don't think that's something that anybody

7   needs to argue about who's not a lawyer, who's party to

8   the case.  We'll be dealing with the attorneys who are

9   party to the case.  And if, in fact, we have to seal any

10   of the discussion, I will put the burden on each counsel

11   who is in the room to immediately alert me to that fact.

12   I won't know -- I mean, I'm brand new to the case.  I've

13   read the complaint.  We've done a little bit of looking

14   and pulled a few statutes.  That's all we've done.

15           So, at any point that there is protected

16   information that we start to talk about, you need to

17   alert me and then we will ask people who are not in a

18   privileged position to be able to hear protected

19   information, to, in fact, leave the room.

20           The agreement that I need then from counsel for

21   the protestor is that if, in fact, we do start talking

22   about it, that you will agree not to pass on the

23   information to your client and use it in the way that

24   attorneys normally do, which is in a protected manner.

25           MR. HUME:  Yes, of course, Your Honor.  You

Palantir Technologies, Inc. v. USA                           7/1/2016

1    said when we start to talk about it, "it" being anything

2    that --

3              THE COURT:  Anything having to do with this

4    case.   In other words, as we talk about this, if we get

5    into evaluation material and we get into something that

6    was protected at the GAO, I need to be alerted to it so

7    that we can close the room.

8              MR. HUME:  Yes, of course.  We agree to

9    anything that's evaluation material, competitively

10   sensitive, that would impact the integrity of the bid

11   process --

12             THE COURT:  Right.

13             MR. HUME:  -- we won't share with our client.

14   I would just note -- and we may get to this later --

15             THE COURT:  And that's all I'm talking about is

16   protected information.  I'm not talking about -- you're

17   saying, well, here's what we have to do or here's what --

18   I need information from you.  You're going to have the

19   normal attorney-client exchange.  It's just that the

20   protected information doesn't go back to them because

21   they're still in the competitive process.  This is a pre-

22   award bid protest.  So --

23             MR. HUME:  That's right, Your Honor.

24             THE COURT:  -- the rules are pretty clear.

25             MR. HUME:  I don't know what the redactions

Palantir Technologies, Inc. v. USA                              7/1/2016

1    were.  I just -- when we see the redactions, I -- we may
2    wish to have the opportunity to ask --
3              THE COURT:  To challenge it, that's fine.  And
4    we'll have to, you know, coordinate it and make sure that
5    we don't have a GAO problem as well.
6              MR. HUME:  Thank you.
7              THE COURT:  Mr. MacGriff?
8              MR. MACGRIFF:  Your Honor, maybe this is a good
9    time to address the issues of a protective order in this
10   case.
11             THE COURT:  Right.
12             MR. MACGRIFF:  It would be our recommendation
13   that we enter the standard protective order with the
14   Court.  I understand that counsel for the Plaintiff
15   agrees largely with that, but has an exception to one of
16   the provisions.
17             THE COURT:  Okay.
18             MR. MACGRIFF:  I think that they would like to
19   provide information to six selective people from their
20   client, and we would object to that.  We would be happy
21   with the normal protective order, but we object to their
22   client receiving any of the information that's not
23   redacted.
24             THE COURT:  Yeah, it's normally not given to
25   the client, but let me hear from you, sir, as to why you

1    think it should.

2                  MR. HUME:  Your Honor, I've had at least one

3    experience in a bid protest case where there was a two-

4    tier protective order and there was some things that were

5    competitively sensitive that only outside counsel could

6    see.

7                  THE COURT:  Right.

8                  MR. HUME:  But another tier where there may

9    be --

10                 THE COURT:  Are you talking about inside

11   counsel or are you talking about people working on the

12   procurement?

13                 MR. HUME:  It could be an either.  I think in

14   the highest priority is inside counsel, and then the next

15   would be business people who could potentially be walled

16   off from procurement.  It should go without saying that

17   the goal is certainly not to give Palantir any

18   information that would help them in the bid, in the

19   competitive situation.

20                 THE COURT:  Right.  And I understand --

21                 MR. HUME:  But there is a sense that -- I

22   believe we were told that there -- or maybe prior bid

23   protest counsel had understood that there were two

24   reasons for the redactions.  One were evaluation things,

25   but the other were more either national security things

Palantir Technologies, Inc. v. USA                    7/1/2016

1    or things related that the Government just didn't want to
2    be public.  We haven't seen them.  Bid protest counsel
3    thought they were overbroad, but couldn't tell us
4    anything more.
5              THE COURT:  Evaluation, national security.
6    What was the third thing you --
7              MR. HUME:  I don't know.
8              THE COURT:  That was the -- I don't know?
9              MR. HUME:  What I said is (inaudible) other
10   things the Government, for whatever reason, didn't want
11   to be public.
12             THE COURT:  All right.  Well, and I'm not
13   averse to talking about something of that sort.  I think
14   what we should probably do -- and then I'll hear from
15   you, Mr. MacGriff -- you're urging to rise there -- I
16   think we put the protective order in place and then we'll
17   talk about your exceptions to that and whether or not
18   they're appropriate.  I think there are often
19   distinctions between inside counsel, unless it's
20   procurement formation counsel --
21             MR. HUME:  Right.
22             THE COURT:  -- in which case you've got the
23   same evaluation issue.  I've been procurement formation
24   counsel in my life, and although I was a lawyer, I was
25   definitely on the -- you know, the submission side of it.

Palantir Technologies, Inc. v. USA                    7/1/2016

```
 1    So -- and then whether any of these other people can be
 2    sufficiently walled off or not.
 3              MR. HUME:  Well, Your Honor, I think that is
 4    actually a better way to proceed than what we've
 5    proposed.  Once we, as outside lawyers, are in the
 6    protective order, see what's redacted --
 7              THE COURT:  Right.
 8              MR. HUME:  -- we'll be in a better position to
 9    see if we have an argument that some of that at least
10    should be shareable.
11              THE COURT:  That's exactly what I'd propose.
12    Now, we'll put the protective order in case.  I guess
13    we'll have to do it today at some point.  I don't know
14    that it will be before the close of business technically,
15    but it will be at some point today.  Our protective order
16    looks slightly different than the standard one, but it's
17    more to open it up for our office.  Somehow the standard
18    protective order forgets some of the court people, so
19    we've added that in.  But the fundamental protections
20    that are in there are the same as what's in the standard
21    protective order, so you'll see it.  I've issued it many
22    times, as recently as last week, or this week even.
23              So, you've got -- you know, it's nothing
24    significant that's changed.  It's just to open it up for
25    our own court personnel.
```

Palantir Technologies, Inc. v. USA

1          MR. MACGRIFF:  And, Your Honor, to that end, I

2     know the standard protective order -- the modified

3     protective order --

4          THE COURT:  Right.

5          MR. MACGRIFF:  -- has the ability for outside

6     counsel or other counsel, like consultants or something

7     or people to apply for and they get 48 hours, I believe.

8          THE COURT:  Right.

9          MR. MACGRIFF:  We will promise to the Court and

10    Palantir's counsel that we will do an expedited review

11    and try to turn that around faster.

12         THE COURT:  Right.  And the only ones I want to

13    see are the ones that you fight over, which will

14    hopefully be none.

15         MR. MACGRIFF:  Right.

16         THE COURT:  So, I don't need you to file those

17    with me on a routine basis.  If there's a disagreement

18    between the parties as to a particular individual

19    obviously, give my office -- talk to Mr. Matson initially

20    and he can either solve it or not.  And, if necessary,

21    I'll get involved.  But it's a pretty routine process.

22    But I don't want to see, don't need to see, and don't

23    think we ought to clutter the ECF up with the routine

24    requests for admission to the protective order.

25         MR. MACGRIFF:  That's very helpful to know,

Palantir Technologies, Inc. v. USA                              7/1/2016

1    Your Honor.  Thank you.

2              THE COURT:  All right.  So, hopefully, you'll

3    be able to figure this all out.  If not, I mean, I'm

4    happy to talk person by person that you're talking about.

5    Bear in mind a couple of things:  One, obviously, anybody

6    who could get close to the evaluation and submission

7    process and, two, the issues that would be triggered by

8    the GAO protective order so that we're respectful of

9    that.

10             All right.  So, let's get down to business

11   here.  We've done the preliminaries.  Any other

12   preliminaries that that we need to cover?

13             MR. MACGRIFF:  Not from the Government's side

14   at this point.

15             THE COURT:  All right, very good.  I'll be

16   happy to keep you on the case, Mr. MacGriff.  This is

17   going very smoothly.  Maybe Mr. Mickle wants to

18   reconsider here.

19             MR. MICKLE:  He's on the case, you know.  I

20   think he's going to want to just step in and take over,

21   which is fine.

22             THE COURT:  Well, that's okay with me.  I've

23   worked with him in the past, so any of those solutions

24   will be great.

25             All right.  So, tell me a little bit about what

Palantir Technologies, Inc. v. USA                          7/1/2016

1    you're seeking, sir, and then the immediate question for
2    the Government is going to be, obviously, response to all
3    of the above, but also the time line, the schedule and
4    when, you know, this is -- the criticality of the
5    schedule.
6              MR. HUME:  Thank you, Your Honor.  May I
7    (inaudible)?
8              THE COURT:  Absolutely, you may.  You can also
9    stay seated.  You know, this is the first hearing.  If
10   you're in here for an oral argument or questioning a
11   witness, yes, you have to come to the center.  Otherwise,
12   I'm not nearly so rigid about it.
13             MR. HUME:  Understood, Your Honor.  Your Honor
14   said that you had a chance to review the complaint.
15             THE COURT:  Quickly.
16             MR. HUME:  It's long.  It -- Your Honor, we do
17   -- every plaintiff feels this way I know, but we do think
18   this is a particularly significant case.
19             THE COURT:  Significant because of the legal
20   issues, the evaluation issues, the particular procurement
21   involved, which is obviously a significant procurement,
22   or all of the above?
23             MR. HUME:  I think all of the above.  But I
24   would order them this way.  I think, number one, that the
25   nature of the procurement is so significant and relates

Palantir Technologies, Inc. v. USA                    7/1/2016

```
1    to a program that's been going on for 15 years.  This new

2    solicitation is for something that will last for six

3    years and it certainly, from our client's perspective,

4    looks like a repeat of what they've already tried that's

5    failed, that's of critical importance to the military.

6    So, the value and the stakes are extremely high.

7            The second thing is -- and we alluded to this

8    in the beginning of our complaint, is the statute,

9    Section 2377 of Title X, is a very powerful, very

10   clear, very strongly-worded statute, and there's nothing

11   in the -- in the case law about it and there's nothing

12   really in the GAO decisions about it, and with all due

13   respect, we don't know which --

14           THE COURT:  Now, which one are you talking --

15   which statute?  Say that again.

16           MR. HUME:  It's --

17           THE COURT:  There are several involved, so --

18           MR. HUME:  The key one is 10 USC Section 2377.

19           THE COURT:  Okay.

20           MR. HUME:  Which says --

21           THE COURT:  The one on top of my pile.  That's

22   good.  We got it in the right order.

23           MR. HUME:  Yeah, that's the right order.

24   Absolutely.  I think it's worth reading that several

25   times because it is very strongly worded and very clear
```

Palantir Technologies, Inc. v. USA                              7/1/2016

1   in terms of the mandate it places on agency's to procure

2   commercial items, to the maximum extent possible,

3   practicable is the word, to define their requirements, to

4   maximize the ability to procure commercial items or

5   nondevelopmental items, and to not pay people to try to

6   develop things that the private sector has already

7   developed that can meet your needs.  That's, in essence,

8   what it says.

9        And this case presents that problem because

10  they are paying to develop something that Palantir

11  already has.  And it's a unique case, or at least a rare

12  case, in that discrete small units with the Army have

13  been able, outside of this big D6 program, to procure the

14  Palantir technology so that --

15       THE COURT:  Is it non-Army groups that have

16  procured it or Army groups?

17       MR. HUME:  It began with non-Army groups.

18       THE COURT:  Right.

19       MR. HUME:  Marines and Special Forces.  Troops

20  on the ground then started to see it and saw how much

21  better it was than the D6 solution the Army had, and they

22  would do what's called an REF, a rapid -- I don't

23  remember the full acronym, but it's an acronym for a

24  special procurement.

25       THE COURT:  Right.

Palantir Technologies, Inc. v. USA                          7/1/2016

```
 1              MR. HUME:  Small -- for one small troop unit,
 2    one platoon perhaps.  There were requests for it
 3    throughout entire brigades, but they were generally
 4    denied and there was stiff resistance.  And this went on
 5    from -- starting in 2010 all the way through to the
 6    present.
 7              THE COURT:  Right.
 8              MR. HUME:  So --
 9              THE COURT:  So, let me ask you since we were
10    talking about protection earlier.  Is the description of
11    the unit or what it can do or what it should do in
12    development privileged in some way?  And I guess I should
13    turn to the Government for that?
14              MR. MACGRIFF:  I don't believe that the
15    description of what's going to happen is privileged.
16              THE COURT:  What it can do?  What the mechanism
17    can do?
18              MR. MACGRIFF:  Well, it's not a widget, so it's
19    not a mechanism.
20              THE COURT:  Right.
21              MR. MACGRIFF:  It's a --
22              THE COURT:  Program.
23              MR. MACGRIFF:  It's a program.
24              THE COURT:  Right.
25              MR. MACGRIFF:  And it's really a program of
```

Palantir Technologies, Inc. v. USA                                7/1/2016

     1    programs.  So --
     2              THE COURT:  Right, I understand.  I guess
     3    mechanism was a bad choice of words.
     4              MR. MACGRIFF:  So, I don't think the
     5    description of what it can do is privileged.
     6              THE COURT:  Okay.  How it does it would be?
     7              MR. MACGRIFF:  I think that -- no, I don't --
     8    well, I don't think how it does it is --
     9              UNIDENTIFIED MALE:  The solicitation is public.
    10              MR. MACGRIFF:  Yeah, the solicitation is
    11    public.  And, quite frankly, there was a GAO decision
    12    that was made public that contains --
    13              THE COURT:  It's got a lot of information in
    14    it.
    15              MR. MACGRIFF:  I have a copy if you would like
    16    me to --
    17              THE COURT:  Yeah, I have a copy.
    18              MR. MACGRIFF:  Okay, all right.
    19              THE COURT:  Okay.
    20              MR. HUME:  We would agree with that.  I mean, I
    21    think it depends on the level of detail.  There may be
    22    something proprietary deep down.  But, basically, the
    23    functionality of what's needed and of what our system
    24    does is public and can be described to the public.
    25              The other thing that's significant about the

Palantir Technologies, Inc. v. USA                    7/1/2016

 1    case and I think rare is that really there is some
 2    evidence of bad conduct, and it goes back many years.
 3    So, it's a bigger case in terms of the relevant factual
 4    period from which information is needed to fully present
 5    a record to the Court.
 6              THE COURT:  All right.  Let's -- I mean, I
 7    don't know what the evidence is and, obviously, that's
 8    something that will be developed, if necessary.  But what
 9    is the relevance of the bad conduct to what's going on
10    here?
11              MR. HUME:  It's highly relevant to the central
12    claim -- to the solicitation because the solicitation
13    makes it impossible for Palantir to compete, to submit a
14    bid.  The solicitation seeks only bids from people who do
15    work on a cost plus basis.  Palantir doesn't do that.
16    Palantir doesn't want to do that.  It wouldn't make sense
17    for Palantir to sell its commercial product that way.
18              THE COURT:  Okay.
19              MR. HUME:  And, so, a commercial item -- so,
20    the question is, why did they craft a solicitation that
21    made it impossible for any company, but including
22    Palantir, to submit a commercial item as a solution when
23    their own troops and commanders in the field are
24    demanding that solution.  And we think the answer, in
25    part, is biased and we think the bias may reflect

Palantir Technologies, Inc. v. USA                    7/1/2016

```
 1    intransigence to innovation, protection of the existing
 2    program, maybe a sunk cost fallacy that they built it one
 3    way and they have to keep trying to tinker with it.  But
 4    we need -- we think there's concrete evidence of that
 5    already and we do think this is one of those cases where
 6    some targeted discovery will be appropriate.
 7              THE COURT:  Well, if -- that's that whole can
 8    of worms, as you know, in bid protests.
 9              MR. HUME:  Yes.
10              THE COURT:  But we'll get through it.  If
11    the -- I should ask it as a different question.  Is the
12    distinguishing factor here with the -- that the
13    solicitation was set up as a cost plus contract, the
14    thing that excluded your client?
15              MR. HUME:  I think there are a couple of things
16    that excluded them, and that's definitely one.
17              THE COURT:  Okay.  And what else?
18              MR. HUME:  Closely related to that is to submit
19    a cost plus bid, the Army says you have to have adopted
20    their cost accounting standards.  That's basically --
21    it's a cost plus contract, you've got to be qualified to
22    do a cost plus contract.
23              THE COURT:  You could have a -- you have to
24    have a CAS mechanism?
25              MR. HUME:  Right.  So, they're not a cost plus
```

Palantir Technologies, Inc. v. USA                          7/1/2016

1    contractor.  They don't have a CAS compliance.  So,
2    that's really all grouped as one thing, I believe.
3              THE COURT:  Right.
4              MR. HUME:  Secondly, I think the solicitation
5    explicitly says that the contractor shall minimize, to
6    the maximum extent possible, the use of commercial items.
7    Now, I'm paraphrasing, but we can get the exact language.
8              Third, the solicitation, from soup to nuts, is
9    set up like a -- almost like an assembly kit manual.
10             THE COURT:  Right.
11             MR. HUME:  With hundreds of to do lists, of
12   here's how you're going to develop this thing for us,
13   building off of our obsolete and dysfunctional software.
14             THE COURT:  That's your characterization.
15             MR. HUME:  It is.  And I don't mean to
16   overstate it, but that is how our client feels.  They say
17   that this doesn't work and that's how the troops on the
18   ground feel, at least those that we've seen written
19   testimonials from or emails from, that they're saying
20   this doesn't work, and what we have with the solicitation
21   is a how-to manual to build something on top of it.
22             THE COURT:  Right.
23             MR. HUME:  I was told by our client, for
24   example, there's an architecture called the DIB, the
25   D-I-B, built in the early 2000s.

```
 1                THE COURT:  Right.
 2                MR. HUME:  Totally obsolete and they're making
 3      us connect to it.
 4                THE COURT:  Well, yeah.
 5                MR. HUME:  So, there's a third reason -- a
 6      third reason.
 7                THE COURT:  Okay.  Are we going to have a
 8      debate over whether the procuring agency can choose its
 9      own method of payment?  I mean, isn't that something that
10      often is left to the agency's discretion, how they're
11      going to pay for it based on their own appropriations?
12                MR. HUME:  Is your --
13                THE COURT:  Availability.
14                MR. HUME:  Judge Horn, is --
15                THE COURT:  I mean, you're telling me they
16      chose a cost plus basis.
17                MR. HUME:  Mm-hmm.
18                THE COURT:  They shouldn't have.
19      Unfortunately, that makes us have to use CAS.  CAS cases
20      are bears.  I totally agree with you.  They're not
21      necessarily fun, but they are what they are and it is a
22      system that is used by the Government across the board.
23      How do you address what is normally the discretion of the
24      agency to choose the payment methodology?
25                MR. HUME:  Well, we would respectfully submit
```

1    that they don't have that discretion --

2              THE COURT:  Okay.

3              MR. HUME:  -- when there is a commercial item

4    available to meet the requirements and --

5              THE COURT:  And what would the payment

6    methodology be for a commercial item?  Why would it not

7    be cost plus?

8              MR. HUME:  Because it's available.  It's

9    already been developed.

10             THE COURT:  So, you're saying it should be a

11   fixed price?

12             MR. HUME:  Yes.  And, in fact, in addition to

13   Section 2377 and the regulations that implement it, there

14   are independent regulations in the FAR strongly

15   disfavoring cost plus contracts unless you can satisfy

16   certain exceptions, which we don't think they can

17   satisfy.  There has to be some really special reason to

18   do cost plus.  The overwhelming favored approach is to do

19   fixed price.  So, that, you know --

20             THE COURT:  There are a lot of different ways

21   to pay for a contract, but okay.

22             MR. HUME:  Yeah, I mean, I think the Court's

23   question is actually extremely interesting because you

24   see the agencies -- this is what I was saying about the

25   importance of the case.  You do see a lot of agencies

Palantir Technologies, Inc. v. USA                          7/1/2016

1    doing cost plus.

2              THE COURT:  Absolutely.

3              MR. HUME:  But then you start looking at the

4    law and you're like, how do you square these laws that

5    have been on the books for 20 years with what these

6    agencies are doing?  Well, apparently, no one has ever

7    had the desire --

8              THE COURT:  The creativity?

9              MR. HUME:  -- to challenge a solicitation in

10   advance and say, you're not complying with Section 2377.

11             THE COURT:  I understand.  I've been dealing

12   with government contracts for a very long time.

13             MR. HUME:  We've looked at -- actually the only

14   decision that ever cited 2377 is a decision by Judge

15   Horn.

16             THE COURT:  That's true.

17             MR. HUME:  With a very different case.

18             THE COURT:  Very, very different case.

19             MR. HUME:  Very different.

20             THE COURT:  Very different.

21             MR. HUME:  So, Your Honor, I think -- I mean,

22   there's a lot to talk about, but I do think one of the

23   main issues is scheduling and that we do want to develop

24   some very -- as targeted as possible, but some discovery

25   requests.

Palantir Technologies, Inc. v. USA                    7/1/2016

```
 1                    THE COURT:  Right.
 2                    MR. HUME:  Bias is one issue.  The second
 3     reason for discovery would be -- one of the big arguments
 4     you're going to hear from the Government is Palantir
 5     doesn't do everything we want them to do.
 6                    THE COURT:  Right.
 7                    MR. HUME:  They only do a piece.  We think that
 8     the -- that stems from some misinformation spread by a
 9     small group of people within the Army.  We also think
10     that the true facts of that can be best established by
11     getting record evidence from the people who have been
12     requesting Palantir for the last six years.  Now, I'm not
13     saying we're going to go -- want to depose every war
14     commander, particularly not if they're still active in
15     the field, but that's one thing we're considering.
16                    THE COURT:  So, who are you saying you want to
17     do discovery on then?  Just random people in the field?
18                    MR. HUME:  No, definitely not.
19                    THE COURT:  I'm not understanding --
20                    MR. HUME:  People we already know and have
21     evidence from.  I mean, I think the first issue we're
22     going to face, we need to see the administrative record.
23                    THE COURT:  You need to see the -- absolutely.
24                    MR. HUME:  Unredacted.  Then we need to discuss
25     with our friends at the Government --
```

Palantir Technologies, Inc. v. USA                              7/1/2016

1          THE COURT:  Well, the administrative record in
2     this case, as the Government full well knows, is not just
3     the GAO record necessarily.
4          MR. HUME:  Right.
5          THE COURT:  So, the first step really will be
6     to set a schedule for you all to develop -- well, for the
7     Government to develop and for you all to see and worry
8     about whether it's complete, the administrative record
9     for the Court.  And that would be the point at which you
10    could make that judgment.
11         I think you're probably very well aware of all
12    the cases on supplementation of the administrative
13    record.  I'm certainly not someone who says never, but I
14    do agree that it is a relatively rare thing in an
15    administrative record review case to open it to
16    discovery.  The --
17         MR. HUME:  We understand, Your Honor.
18         THE COURT:  There has to be a good reason and
19    there has to be solid information.  Whether individuals
20    in the field would like to have this are really what
21    we're talking about, I don't know.
22         MR. HUME:  I don't, to be honest, know either
23    yet, Your Honor.  I wanted to give the Court some sense
24    of what we're thinking.
25         THE COURT:  Right.

Palantir Technologies, Inc. v. USA                          7/1/2016

1           MR. HUME:  The first thing I think is we want
2    to try to persuade the Government to accept a lot of the
3    material -- all the material we cited in our complaint,
4    if it's not in the administrative record, and see if
5    they'll agree on that.
6           THE COURT:  Well, you all will get an
7    opportunity to work together on that, obviously.
8           MR. HUME:  And if they -- you now, depending on
9    what they agree to, and then there's some targeted sets
10   of documents, and I think we would like and we'd like to
11   discuss that with them.  And, frankly, part of our
12   uncertainty with (inaudible) is also what exactly are
13   they going to say and how are they going to defend this,
14   that may impact what targeted discovery we may seek,
15   fully aware of the legal standard.
16           (Pause in the proceedings.)
17           THE COURT:  I work with my law clerks as second
18   chair.  So, you have a second chair, I have one, too.
19           MR. HUME:  I know.  I've sensed --
20           THE COURT:  And Mr. Matson is an experienced
21   attorney.  He's not -- you know, he's been practicing for
22   a while and with one of the big firms as well.
23           MR. HUME:  Understood.  I have seen David Boies
24   react similarly to some of my notes, so...
25           THE COURT:  No, I didn't react at all.  I'm

Palantir Technologies, Inc. v. USA                        7/1/2016

1   just -- I think what he wrote was absolutely accurate.

2   I'm just trying to think --

3             MR. HUME:  He never says that.

4             THE COURT:  -- how to process it.  I am not

5   David Boies.

6             MR. HUME:  No.  Well, none of us are.

7             So, Your Honor, I mean, we have had some

8   discussion about the schedule.

9             THE COURT:  Right.

10            MR. HUME:  We're not -- we're a bit apart.  We

11  -- the Government has represented that the Army will not

12  make a decision before August 15th on issuing an award.

13  They said the Army is continuing to process, but it is

14  not going to issue an award before August 15th.  We --

15  and I think they would very much like to set a schedule

16  that completes all the briefing and gets a decision

17  before August 15th.  In our view, that's not realistic or

18  fair to the case and fair to the presentation of the

19  facts relevant to decide a case of this importance.

20            THE COURT:  So, it depends whether we have

21  discovery or not, obviously.

22            MR. HUME:  It does depend on that and on some

23  supplementation.  But we -- at a minimum, I think we're

24  going to try to present to the Court some declarations,

25  not a lot, but maybe two, and that may lead to some

Palantir Technologies, Inc. v. USA                          7/1/2016

```
 1   depositions or, obviously, an effort to exclude them.
 2              THE COURT:  I'm sure it will.
 3              MR. HUME:  So, we think there's going to be a
 4   lot of skirmishing around the factual stuff.
 5              THE COURT:  Right.
 6              MR. HUME:  And that once we get their brief,
 7   we're going to want more than a week to not only respond,
 8   but figure out what information we need to help us
 9   respond to get a complete record.
10              THE COURT:  I mean --
11              MR. HUME:  So, you know, in our view, in terms
12   of August 15th, we simply don't see why the Government
13   suffers any material prejudice if they push that out to
14   September.
15              THE COURT:  Is there -- the incumbent, is that
16   your client?
17              MR. HUME:  The --
18              THE COURT:  The incumbent system that's
19   working, is that your client?
20              MR. HUME:  The incumbent system that's
21   operating this system --
22              THE COURT:  Right.
23              MR. HUME:  -- it's, first of all, not one, but
24   dozens.
25              THE COURT:  Right.
```

For The Record, Inc.
(301) 870-8025 - www.ftrinc.net - (800) 921-5555

Palantir Technologies, Inc. v. USA                    7/1/2016

    1            MR. HUME:  And not our client.

    2            THE COURT:  That was my question.

    3            MR. HUME:  Yeah.  But the -- I don't -- well,

    4   I'll let the Government speak.  I think --

    5            THE COURT:  Your colleague was quick to respond

    6   to that.

    7            MR. HUME:  She was.  She has better ears than I

    8   do and other things as well.  But I don't think there's

    9   any prejudice pushing it out to September.  I don't,

   10   frankly, think the Government is likely to issue an award

   11   before September anyway.  And, so, we would just try to

   12   throw a little bit more time into the briefing schedule

   13   to allow us to address some of these factual discovery

   14   issues.

   15            THE COURT:  Well --

   16            MR. HUME:  We would propose trying to get

   17   everything briefed before you to have a hearing in early

   18   September.

   19            THE COURT:  Well, we'll work our way through

   20   it.  My philosophy on that is I certainly would encourage

   21   the agency to give us enough time to do it in a more

   22   moderate pace if that's the case.  But at the same time,

   23   you filed it as a bid protest.  It's for the same reason

   24   that I was surprised that Ms. Kirchner wasn't here today.

   25   We will keep rolling --

1          MR. HUME:  Understood.

2          THE COURT:  -- as far as we have to.  That

3    will, obviously, inconvenience people from the very

4    beginning, including how fast the administrative record

5    has to be assembled.  Since that's the first step,

6    regardless, we're going to do that quickly.  So, anything

7    else?

8          MR. HUME:  We would certainly agree with that.

9    No, that's it, Your Honor.  Thank you.

10          THE COURT:  All right.  Mr. MacGriff --

11          MR. MACGRIFF:  Yes, Your Honor.

12          THE COURT:  -- tell me about the schedule, the

13    Army's flexibility with respect to the schedule, if any,

14    and why it needs to be inflexible if it is.

15          MR. MACGRIFF:  The Army has some flexibility.

16    So, I'm not going to stand up and be rigid about it.  The

17    Army would like to have a decision by August 15th so that

18    it could get the award issued and in place and the task

19    orders issued before the end of the fiscal year.

20          THE COURT:  Is there a functioning system then?

21          MR. MACGRIFF:  There is not a functioning

22    system.  There has to be -- there are several --

23          THE COURT:  There are multiple systems.

24          MR. MACGRIFF:  There are multiple -- let me

25    back up and sort of explain this.

Palantir Technologies, Inc. v. USA                    7/1/2016

```
 1                THE COURT:  So, they're -- I don't want to get
 2      too detailed --
 3                MR. MACGRIFF:  Yes.
 4                THE COURT:  -- for a variety of reasons, which
 5      I'm sure you can appreciate as to what the systems are or
 6      will be at this point.
 7                MR. MACGRIFF:  Yes.
 8                THE COURT:  Because it's premature.  But is
 9      there a function -- is it functioning at this point
10      essentially?
11                MR. MACGRIFF:  There is a functioning system in
12      place.
13                THE COURT:  Right.  That's my only question.
14                MR. MACGRIFF:  In place.
15                THE COURT:  Okay.
16                MR. MACGRIFF:  And the procurement --
17                THE COURT:  Makes it better.
18                MR. MACGRIFF:  -- makes it -- it builds on it.
19                THE COURT:  Makes it better.
20                MR. MACGRIFF:  Yes.
21                THE COURT:  Okay.  That's what I was trying to
22      understand.
23                MR. MACGRIFF:  May I share with you the dates
24      that we proposed to the Plaintiff?
25                THE COURT:  Please, yes.
```

```
 1              MR. MACGRIFF:  All right.  We proposed to
 2     produce the administrative record by next week, July 7th.
 3     We proposed -- that's the first date.  We propose that
 4     the Plaintiff -- well, I'll give you the dates and then
 5     let me talk to you a little bit about it.
 6              THE COURT:  All right.
 7              MR. MACGRIFF:  So, we propose that the
 8     Plaintiff file its motion on the administrative record
 9     and motion for judgment on the administrative record by
10     July 14th.  We propose that the Government respond to
11     that motion and file its cross-motion by July 22nd.  We
12     propose that the Plaintiff reply to our cross-motion --
13     or reply and then respond to our cross-motion by July
14     27th.  We propose that the Government --
15              THE COURT:  Hold on, hold on, I don't write
16     that fast.
17              MR. MACGRIFF:  Oh, I apologize.
18              THE COURT:  Twenty-seventh, you said?
19              MR. MACGRIFF:  Yes, the 27th.
20              THE COURT:  Okay.
21              MR. MACGRIFF:  We propose that the Government
22     file its reply by August 5th and that the Court hold its
23     hearing thereafter, you know, the week or so after and
24     then issue it -- hopefully, try to have this done by
25     August 15th --
```

Palantir Technologies, Inc. v. USA                    7/1/2016

```
 1              THE COURT:  Tell me how much time you gave the
 2    Court to decide this thing or do you want me not to
 3    review the filings?
 4              MR. MACGRIFF:  No, no, of course --
 5              THE COURT:  Obviously, I'm going to review the
 6    filings regardless.  But I think you have to leave us a
 7    little bit of time to get this done.
 8              MR. MACGRIFF:  Well, that's why I want to get
 9    the filings on -- in front of the Court so the Court can
10    take time to look through the motions.  And if we set an
11    August 15th, you know, date, then that gives you -- if
12    you need a little bit of extra time on top of that, it's
13    there and, you know, if we need to slip a week or, that's
14    fine.
15              THE COURT:  I think that's really ambitious.
16              MR. MACGRIFF:  Yes, I realize that.  But, Your
17    Honor, may --
18              THE COURT:  What about the comments that Mr.
19    Hume made with respect to -- I think he was most focused
20    on the timing from the administrative record to the
21    Plaintiff's motion for administrative -- for
22    administrative record review of just a week.
23              MR. MACGRIFF:  Your Honor, there's already been
24    a GAO hearing on this case.  There's already been
25    testimony offered at the GAO --
```

Palantir Technologies, Inc. v. USA                           7/1/2016

1           THE COURT:  Okay.  Different law firm, correct?

2           MR. MACGRIFF:  Yes, ma'am.  Same client.

3           THE COURT:  Same client.  I get from the

4    Defendant, the Department of Justice -- actually, I've

5    had four conferences today in various cases, some of them

6    within National Courts, some not, and I got one who just

7    changed attorneys that can't get that brief in.  It was

8    due today.

9           MR. MACGRIFF:  And I've been involved in that

10   as well myself, and I appreciate that.  But in this

11   particular case, there are no new issues that have really

12   been raised in the complaint.

13          THE COURT:  Yeah, but different lawyers see

14   things completely differently as you know.

15          MR. MACGRIFF:  Yes, ma'am.

16          THE COURT:  None of us agree with each other.

17   So, I mean, that is very ambitious.

18          MR. MACGRIFF:  Yes, ma'am.

19          THE COURT:  So, administrative record, how --

20   let me ask a serious question about the administrative

21   record.  You've got a GAO baseline.

22          MR. MACGRIFF:  Yes.

23          THE COURT:  It's probably much less robust than

24   what Plaintiff is going to want and -- and I just got the

25   right note from Mr. Matson because I wouldn't have said

Palantir Technologies, Inc. v. USA                          7/1/2016

1   it just this way, but it's exactly the right answer.

2   He's only seen the unredacted.  So, there's a fair amount

3   of information in the GAO, potentially, that -- record

4   that he, you know, hasn't been able to see.  I assume

5   that Coie turned over to Boies Schiller the redacted

6   version, but, you know, lawyers don't like redacted

7   versions because they think that one little blackout

8   there is going to be the critical thing.

9           So, I would suggest a couple things.  Number

10  one, turn over an unredacted version of the GAO record to

11  protestor's attorney no later than -- well, I don't know

12  how quickly you could get it.  Is it online?

13          MR. MACGRIFF:  Do we have an electronic

14  version?

15          THE COURT:  Mm-hmm.

16          MR. MACGRIFF:  I believe that we do.

17          THE COURT:  Okay.  Somebody send it over to

18  them today, unredacted version once we get the -- as soon

19  as we get the protective order in place.

20          MR. MACGRIFF:  Your Honor, I'm not sure that

21  it's ready to go today.  I mean, I can send over what the

22  GAO record was.

23          THE COURT:  That's what I'm talking about.  I'm

24  talking about the GAO record.

25          MR. MACGRIFF:  Oh, yes, oh, yes, we can do

Palantir Technologies, Inc. v. USA                                    7/1/2016

1    that.

2              THE COURT:  Can we do that?

3              MR. MACGRIFF:  I think we can do that.

4              MR. MICKLE:  The Army owns it, right?

5              UNIDENTIFIED MALE:  Yes, it wouldn't violate

6    the GAO protective order for us to give it to them under

7    this protective order.

8              THE COURT:  Okay, that's exactly right.  So, as

9    soon as we put the protective order in place, send it

10   over to Mr. Hume.

11             MR. MACGRIFF:  Okay.

12             THE COURT:  And we'll put it in place -- do you

13   want to maybe call upstairs and let's get that going and

14   see -- can Eric pull a protective order.  Just have it

15   and we'll sign it.  Have him send it down.

16             (Pause in the proceedings.)

17             THE COURT:  So, we'll -- we're going to get one

18   prepared right now.  So, before you leave, we'll put it

19   in place.

20             MR. MACGRIFF:  Okay.

21             THE COURT:  Officially, it's in place right now

22   orally.  We'll all agree to be bound by it.  Yes, Mr.

23   Hume?

24             MR. HUME:  Yes, Your Honor.

25             THE COURT:  Mr. MacGriff on behalf of the

Palantir Technologies, Inc. v. USA                    7/1/2016

1    Government?

2              MR. MACGRIFF:  Yes, ma'am.

3              THE COURT:  All right.  And we'll get it signed

4    out and get it done even before the 4th of July holiday

5    weekend, which none of us are starting to celebrate

6    early.

7              So, you're bound by the protective order by

8    this point forward.  You're going to get the GAO.  The

9    Army will get the GAO today over -- the record over to

10   you so you have an unredacted version.  That starts to

11   solve part of the problem.  It doesn't solve it all.

12             In terms of the actual administrative record in

13   this Court, what are you thinking would have to

14   supplement it or --

15             MR. MACGRIFF:  I can go back and look at what

16   Ms. Kirchner has already done because she's already

17   started trying to pull this together for us, and I

18   believe --

19             THE COURT:  Well, but she's missing.

20             MR. MACGRIFF:  She's missing today, but --

21             THE COURT:  And she's missing over the weekend.

22   The weekend's a good time.

23             MR. MACGRIFF:  Yeah, I understand that.

24             THE COURT:  So, somebody needs to do it --

25             MR. MACGRIFF:  I believe that it --

Palantir Technologies, Inc. v. USA                          7/1/2016

 1            THE COURT:  -- and it needs to --

 2            MR. MACGRIFF:  I believe that it's already -- I

 3    think a lot of it is starting to come together.  I don't

 4    think that we have --

 5            THE COURT:  In a place you can find it?

 6            MR. MACGRIFF:  Yes.

 7            MR. MICKLE:  Yes.

 8            THE COURT:  Okay, good.

 9            MR. MICKLE:  We want to make sure that it's

10    text searchable and all the spreadsheets and that stuff.

11            THE COURT:  Right.  I was going to say that,

12    too.  I don't know what the GAO record looks like and

13    whether it's text searchable and optical recognition in

14    the case of anything we need to see that's not obvious

15    from the text searchability.

16            So, when you look at that, I think as soon as

17    you've got a handle on that, you should contact Mr. Hume

18    and his colleagues and start talking about what you would

19    add by the Department of Justice and the Army and then

20    start talking to him about what he would add.

21            I have to say I'm a little bit skeptical about

22    these random people, and I understand you've chosen them

23    carefully so they're not random in your eyes, but they

24    sound random to me at the moment.  Because it's not

25    reliable information if you -- necessarily.  You'd have

Palantir Technologies, Inc. v. USA                          7/1/2016

1    to prove to me that it has some reliability in a generic

2    context because I -- unfortunately for you, I just went

3    through a case literally on Wednesday in which they

4    wanted to give me all of these folks who really wanted

5    this piece of military equipment in the field and --

6    yeah, I'm sure they did, but it was Jim over here and

7    John over there and Henry over there, and I was having a

8    lot of trouble understanding that.

9            So, maybe it's my problem; maybe it's not, but

10   there has to be a reliability factor to a generic context

11   in a government procurement.  So -- but there may be

12   other things that you think should be in the record.

13   It's pre-award.  So, you know, we're not going to have

14   actual evaluation reports.

15           I don't know to what extent -- I guess I need

16   to ask this as a question.  To what extent have there

17   been technical evaluations already or --

18           MR. MACGRIFF:  I think they're in the process

19   of having discussions this week.  I believe that's the

20   case.

21           MR. HUME:  Your Honor, our complaint recites

22   two instances in which there were technical evaluations

23   favorable to Palantir, one of which was ordered deleted

24   and replaced with -- scrubbed of all the good stuff on

25   Palantir.  The other, the funding was cut before it could

Palantir Technologies, Inc. v. USA                    7/1/2016

 1    be fully funded.

 2            MR. MACGRIFF:  But that's not in the context of

 3    this protest.  That's --

 4            THE COURT:  The --

 5            MR. HUME:  But it is highly relevant to this

 6    protest because it shows the bias and the hostility from

 7    the D6 program owners that we think is part of what's

 8    driven the solicitation.

 9            THE COURT:  Let me ask you a question of

10    timing, though.  In terms of evaluation, that's one

11    thing.  In terms of setting up the procurement as it was

12    set up with these eliminators, so to speak, for your

13    client, isn't that a different set of issues?

14            MR. HUME:  Absolutely not in our view, Your

15    Honor.  It's a continuing -- continuation of what they've

16    been doing for the last seven or eight years, since 2010,

17    when they first -- the first major general, head of intel

18    in Afghanistan, ordered --

19            THE COURT:  Well, let's not be so specific

20    here, please.  It's -- let's not go there.

21            MR. HUME:  Sorry, sorry.

22            THE COURT:  We're not ready for that.  But --

23    well, I'll let you all talk first and see where you

24    disagree and where you agree.  I will say this, in order

25    to supplement the administrative record based on Axiom

Palantir Technologies, Inc. v. USA                          7/1/2016

 1    and a lot of other cases, you know, we have to be sure
 2    that it assists the Court in making its decision.  I have
 3    some feeling in my own mind that Axiom really didn't
 4    change the universe that much.  Used different words, but
 5    essentially we're using the same test.
 6              It maybe says a little more strongly, don't do
 7    it unless you really think it's going to be useful.  But,
 8    you know, you'll have to demonstrate to -- you're on an
 9    uphill slope, so to speak.  You'll have to demonstrate
10    that it is, A, of course, relevant, but, B, will assist
11    the Court in arriving at a fair and just decision.  So,
12    you know, that discussion should be had between the two
13    of you.
14              MR. MACGRIFF:  Yes, ma'am.
15              THE COURT:  If the Army is interested in
16    meeting an August 15th deadline, which I agree is very
17    ambitious, then I suggest you not spend a lot of your
18    time fighting about the administrative record.  That
19    works both ways.
20              MR. MACGRIFF:  I appreciate that, Your Honor.
21              THE COURT:  So, you can -- yeah.
22              MR. MACGRIFF:  Okay.
23              THE COURT:  So -- you don't have to get up each
24    time.  You're welcome to --
25              MR. MACGRIFF:  To be clear --

Palantir Technologies, Inc. v. USA                    7/1/2016

1           THE COURT:  I understand if you can't do it.

2    When I was litigating, I was totally incapable of

3    thinking and talking without standing up.  So, I get

4    that.

5           MR. MICKLE:  Thank you for putting me at ease.

6    It is a little bit deeply ingrained by now.

7           THE COURT:  Oh, I did it when I was nine months

8    pregnant and the judge kept telling me to sit down and I

9    just couldn't do it.

10          MR. MACGRIFF:  And with respect to the

11   schedule, Your Honor, if we need to slip everything by a

12   week, I mean, the Army would agree to that.  We just want

13   to --

14          THE COURT:  Let me ask you, is there a FASA

15   issue in here or a standing issue?

16          MR. MACGRIFF:  We believe that there may be a

17   standing and a jurisdictional issue.  We felt that that

18   could be addressed as part of our briefs, assuming that

19   we were going to be aggressive in getting the motion and

20   cross-motion on file and in front of Your Honor.  If we

21   slip this case significantly, then perhaps we need

22   initial briefing on that.  But I think that if we stick

23   to a relatively aggressive schedule, we can address that

24   in our merits brief or in our brief.

25          THE COURT:  Okay.  I think you should go back

1    to the Army and see if we can get any more time.  That's

2    the first thing.  But at this point, we'll work within

3    this schedule or at least front end load everything in a

4    way that hopefully we can see if we get out to the end.

5    By the time I've got your initial briefs on both sides, I

6    will have a fairly good idea -- and that's also what I'm

7    going to do with standing -- we'll have a fairly good

8    idea on, you know, a chance of recovering on the merits.

9           I won't necessarily know the answer, but I'll

10   have a good inclination which will then bring us back to

11   whether or not we issue an injunction pending the

12   remaining of the briefs.  So, that remains on the table

13   for you on the protestor's side if, in fact, we're

14   bumping up against the schedule.

15          But that's easier for me to decide, frankly, in

16   the nature of a preliminary injunction once I have read

17   your opening briefs for both sides because I'll have a

18   much better sense of the case.

19          MR. MACGRIFF:  I think, to be clear, they

20   haven't filed --

21          THE COURT:  They've asked for a preliminary

22   injunction.  That's right.

23          MR. MACGRIFF:  Yes, right.

24          THE COURT:  But we can revisit that if the

25   schedule is bumping us in ways that -- they always have

Palantir Technologies, Inc. v. USA                    7/1/2016

1   the option to file a TRO.

2           MR. MACGRIFF:  Yes.

3           THE COURT:  So, if we're bumping up against the

4   schedule, we can revisit it in that way, too, to buy more

5   time if, in fact, it looks like there is some chance of

6   recovery on the merits.

7           MR. MACGRIFF:  Well, I think we'll have a

8   better sense, as you've said already, once they look at

9   the record --

10          THE COURT:  Right.

11          MR. MACGRIFF:  -- and they let us know what

12  sort of supplementation they think could be relevant.

13          THE COURT:  Right.  And bear in mind, I don't

14  preclude it on supplementation, but I don't encourage it

15  at all.

16          MR. MACGRIFF:  I understand that.

17          THE COURT:  It's a pretty narrow type standard

18  as far as I'm concerned.

19          MR. HUME:  That's understood, Your Honor.  Just

20  so I'm clear --

21          THE COURT:  Well, let me give you the schedule

22  before you worry about it because it's not exactly what

23  you're proposing here.

24          MR. HUME:  We haven't made our proposal, but

25  we'll --

Palantir Technologies, Inc. v. USA                    7/1/2016

1           THE COURT:  All right.  Well, I mean, I think I
2   have to work within -- at this point, work within the
3   August 15th date.  I can't say I'm delighted about it
4   either.  I mean, it's going to mean some real issues for
5   us, too.  But that's fine, we'll do it.  We're here, you
6   know, to get this job done.  The Government's here to get
7   the job done and you're the ones that filed the bid
8   protest.  So, on all scores, we just have to live with
9   it.  But what else do I need to know from you, sir,
10  before we talk serious schedule here?
11          MR. MACGRIFF:  I think that -- I think we've
12  covered everything that I need to talk about right now.
13          THE COURT:  All right.  And the reason, you
14  know, I think we have to work within the August 15th date
15  is I have really on two choices.  If the Government says
16  it is going to go forward and issue a decision on the
17  procurement on August 15th, unless I enter an injunction,
18  they can go issue the August 15th award.  And, so, we've
19  got sort of only certain options on how to play this.  If
20  the Government is willing to give us a little more time,
21  I'd be delighted on all of our behalfs because we could
22  all do it in a more deliberate manner.  And I would say
23  to you, Mr. MacGriff or to Mr. Mickle and to you, sir,
24  from the Army, go back and revisit that one for me
25  because I'll tailor the schedule in ways that I think

1    might benefit from additional time.  But if we don't have

2    it, we'll make it work.

3          So --

4          MR. MACGRIFF:  Maybe, Your Honor, what we do is

5    we go forward with the initial schedule that you're going

6    to propose and that works within the August 15th date.

7    Once we understand what it is they think they might

8    supplement, we revisit the scheduling conference at the

9    end of next week or sometime in the next --

10         THE COURT:  That's fine with me.

11         MR. MACGRIFF:  And then if there needs to be

12   some slippage, we will have time -- have had time to talk

13   to the Army about it.

14         THE COURT:  That would be fine.

15         MR. MACGRIFF:  And we'll have a better sense

16   about the timing.

17         THE COURT:  That would be fine.  And I think

18   you can communicate -- and your Army representative is

19   here, he can communicate it as well -- that this is a

20   schedule that nobody is going to be particularly happy

21   with, and once we set it, you know, we're going to live

22   with it.  I will, I promise you, back it up a little bit

23   so that I have a little more time because this is --

24   these are not, as Mr. Hume has suggested, these are not

25   issues that have a whole lot of precedence setting out

Palantir Technologies, Inc. v. USA                          7/1/2016

1    there.  So, you know, we've got to be a little creative
2    and creativity takes a little extra time sometimes.
3            MR. MACGRIFF:  I appreciate that.  Let me just
4    respond by saying, initially, in looking through their
5    complaint, there's a significant policy issue they're
6    trying to argue through the vehicle of this case that
7    maybe is not necessarily appropriate to the procurement
8    that they're talking about.
9            THE COURT:  Well, that could be.
10           MR. HUME:  Your Honor, may I be heard briefly
11   on the schedule, very briefly?
12           THE COURT:  Sure.
13           MR. HUME:  First of all, the policy we're
14   arguing for is what's written down in black and white in
15   Section 2377, and we'll talk more about that --
16           THE COURT:  We can argue about that later.
17           MR. HUME:  -- we'll talk more about that later.
18   But we would -- we would like -- I think that once we get
19   the record, which the Government said we can get the full
20   record on July 7th, we would like to have a full two
21   weeks to try to figure out what we can agree on
22   supplementing --
23           THE COURT:  You've already said that, yeah.
24           MR. HUME:  Well, their proposal would only give
25   me one week.

1           THE COURT:  I understand.  You've already said
2    that one week, you thought, was insufficient.
3           MR. HUME:  I simply wanted to alert that Court
4    that if we're not going to be able to use the multitude
5    of requests from the field for our technology, that is
6    going to significantly impact our brief.  I think we can
7    have a winning brief either way, but I think we --
8           THE COURT:  Yeah.
9           MR. HUME:  -- we would appreciate as much
10   clarity as we can get on what's going to be supplemented
11   and what's not.  And the second thing -- I quite like the
12   Court's suggestion of getting the two opening briefs done
13   and then see where we are on the schedule and whether --
14   you know, whether we need to seek emergency relief if the
15   Army can't push that date back, because we're going to --
16   they're giving us five days right now between their brief
17   and our reply --
18           THE COURT:  I understand.
19           MR. HUME:  That is not --
20           THE COURT:  I can see it.  I've written it
21   down.  I can see it visually.
22           MR. HUME:  Okay, all right.
23           THE COURT:  I understand it's very tight.
24           MR. HUME:  The only final point, Your Honor, I
25   think we want this resolved before there's an award.  As

Palantir Technologies, Inc. v. USA                    7/1/2016

1    a technical matter, I actually think if there were an
2    award -- first of all, it would be up to us, if they
3    won't move the date, to seek that TRO based on --
4              THE COURT:  Exactly.
5              MR. HUME:  -- what you've already been briefed.
6    And, second of all, even if there were an award, the
7    Court can issue corrective action even after that.  We
8    might need some injunctive relief to prevent performance,
9    but this is a long -- this is going over six years.  We
10   don't think anything's going to happen real soon.
11             THE COURT:  Who knows?
12             MR. HUME:  Okay.
13             THE COURT:  But more than that, I mean, I'm not
14   one to be shy if I think that there's been a procurement
15   violation.  I'm about to issue one which nobody's going
16   to be happy with and, you know, even the winners aren't
17   going to be happy in this one.  So, there were -- you
18   know, if there's a procurement violation, there's a
19   procurement violation and we'll call it as such.
20             But, anyway, so here's what I would propose.
21   All right.  So, we're going to start shaving times here
22   in order to give us a little bit of time to decide this
23   thing.  At the moment, you've given us, you know, from
24   August 5th to the drop-dead date to issue an opinion on a
25   fairly complicated set of issues on, obviously, a very

Palantir Technologies, Inc. v. USA                      7/1/2016

1   significant procurement.  So, you know, I'm not sure

2   that's going to do it.  But let's start by shaving up-

3   front and also addressing the issue of standing.

4              So, the administrative record -- the GAO

5   administrative record will be delivered, unredacted

6   version, to the protestor today July 1st.  And that will

7   give you an opportunity to dive into it in an unredacted

8   form.  Obviously, unredacted needs to be filed under

9   seal.  So, from that his point forward, we're sealed for

10  the moment with the obligation on the parties to confer

11  and to come to me at any point with -- as soon as you

12  identify it with motions to unseal because that is

13  obviously what I want to do and also the obligation of

14  the Courts to do and to keep everything that can be kept

15  in the public domain in the public domain.  So, that's

16  going to happen on July 1st today.

17             We've entered the protective order orally and

18  we are having one printed for this case as we speak

19  upstairs.  So, you'll get the electronic version today as

20  well, but you all are bound by the protective order as we

21  speak now, from this point forward.

22             The administrative record for this case, which

23  would include the GAO record -- and we're not going to be

24  arguing -- I'll give you the opinion right now.  We're

25  not going to be arguing about whether the GAO record is

Palantir Technologies, Inc. v. USA                      7/1/2016

1   part of the case.  It is from my perspective.  There are

2   some judges that disagree.  I take it as a given that the

3   GAO record is a part of the case.  So, that will be part

4   of the administrative record in this case and part of

5   what you will file.

6           We're going to get the administrative record

7   from you by noon on July 6th.  And once I've got this in

8   place, we may go back and readjust it once I visually see

9   it here.

10          The motion for judgment on the administrative

11  record to be filed by the Plaintiff will be due on -- and

12  you can start working on this.  You know what you're

13  doing.  You know what the issues are primarily.  You know

14  what the legal issues are particularly on commercial

15  items.  There's a lot you can do, even certainly once you

16  get the GAO record and -- so, that will be due on July

17  12th.

18          And on that same day, July 12th, the

19  Government's motion, if it is going to be filed, on any

20  standing or preliminary issues will be due on that same

21  day.  So, that also will give the protestor an idea of

22  whether we have standing issues or preliminary issues.  I

23  can see where there might be.  I don't have any opinion

24  on it.  I understand that it would be an issue that would

25  come up, but I'm not sure whether it's a -- you know, has

Palantir Technologies, Inc. v. USA                    7/1/2016

1    validity or not at this point, obviously.

2              MR. MACGRIFF:  We're still looking at that

3    issue.

4              THE COURT:  Pardon?

5              MR. MACGRIFF:  We're still looking at that

6    issue.

7              THE COURT:  Yeah.  And if you are not planning

8    to file a motion for standing -- on standing or any

9    preliminary jurisdictional issues -- that includes any

10   jurisdictional issues, then I think as soon as you've

11   made that decision, out of courtesy, you would call Mr.

12   Hume and let him know that.

13             MR. MACGRIFF:  We will.

14             THE COURT:  And also file with the Court on

15   that either on or before that July 12th date a notice to

16   the Court that you do not intend to file.

17             MR. MACGRIFF:  Okay.

18             THE COURT:  But if you -- you know, if you file

19   one, it will be due on July 12th.

20             Then the Government's motion, therefore, will

21   be due on July 19th, and the Plaintiff's reply, which

22   would reply to -- well, let me go back.  The Plaintiff's

23   reply would be due -- and replies, to me -- understand

24   what I think about replies here.  They do not repeat what

25   you've already done.  A lot of lawyers have trouble with

```
 1    it.  I'm not suggesting that anybody in the room has
 2    trouble with it, but it is a common problem.  And all I
 3    really want is something that is newly raised that you
 4    haven't been able to address that you think needs to be
 5    addressed.  So, that should be a relatively short
 6    turnaround and that would be -- the Plaintiff's reply
 7    will be due on the 25th of July and the Defendant's reply
 8    would be due on the 29th of July.
 9            And in addition, since the Plaintiff -- since
10    the Defendant is filing its standing motion on the 12th
11    of July, the Plaintiff should file a response to the
12    standing issues only now I'm talking about on the -- also
13    on the 19th of July and -- if there are standing issues,
14    we will deal with them first.  I don't think, as I'm
15    struggling with this right now in another case where I
16    felt uncomfortable deciding the standing issues until I
17    had -- in a bid protest until I had more information on
18    the filings from the administrative record.  Can we just
19    work through that?  I think in this case I can look at
20    those standing issues, because it's pre-award, without
21    necessarily having to have the benefit of all the rest of
22    the filings.
23            You know, we're works in progress here, too,
24    sitting up here.  So, we learn how to do this better as
25    well.
```

Palantir Technologies, Inc. v. USA                    7/1/2016

1          If the Government wishes to file a reply on

2     standing, I think it should be -- I mean, it should be

3     very quick and I would anticipate that you would get that

4     to us by the 22nd at noon.  That's so that we can work

5     over the weekend, too.  And this is on standing.

6          So, we have -- and I'll revisit all these dates

7     for you in a moment.  We have the following -- and even

8     this, I think on everybody's part, including the Court's,

9     is pretty ambitious.  So, I would reiterate my request

10    for the Army to revisit whether or not August 15th is

11    really the drop-dead date here.

12         But here we go.  So, for the issue of standing,

13    we have Defendant's opening brief due on July 12th, and

14    if the Defendant decides not to file a standing brief, at

15    least a notice of intent not to file on or before that

16    same date.  Plaintiff's standing response will be on July

17    19th and Defendant's reply will be on -- whoops, what did

18    I say?

19         MR. MACGRIFF:  July 22nd.  July 22nd at noon.

20         THE COURT:  The 22nd.  I didn't write down the

21    second digit.  Sorry about that.

22         MR. MACGRIFF:  That's okay.

23         THE COURT:  July 22nd.  On the judgment on the

24    administrative record, the administrative record at the

25    GAO will be handed over to protestor's outside counsel

Palantir Technologies, Inc. v. USA                              7/1/2016

```
 1   with no opportunity yet to turn it over to the client or
 2   anybody, the client, lawyer, or otherwise, until you work
 3   that out with the Defendant or come to me to work it out,
 4   which is fine, too.  I'm around all of next week, and
 5   even the following week when I'm in and out a little bit,
 6   I should be a phone call away.  So, it shouldn't be a
 7   problem.  It's only the end of that next week that I
 8   might be somewhat harder to find.  Mr. Matson probably
 9   can solve much of this for you and he knows where to find
10   me pretty much at any time, and we have robust text
11   exchanges even when I'm out of town.  So, that shouldn't
12   be a problem.
13          So, the GAO administrative record and
14   everything else is sealed at this point.  That will be
15   turned over to Boies Schiller today.  The administrative
16   record itself will be filed on July 6th.  The motion for
17   judgment on the administrative record by the Plaintiff
18   will be filed on July 12th.  The Defendant's motion and
19   cross-motion and response on July 19; the Plaintiff's
20   reply on July 25 and the Defendant reply on July 29.
21          Obviously, we stand ready to assist you on any
22   disputes that may arise between the parties.  I'm happy
23   to do it by telephone conference.  I do think -- you're
24   welcome to stay in the courtroom and work out anything
25   that you have to do.  This courtroom is ours for the rest
```

Palantir Technologies, Inc. v. USA                    7/1/2016

1    of the day.  And I recognize we're coming on a holiday
2    weekend, but that's the choice of the Plaintiff or the
3    protestor, rather, when they filed it and we are here to
4    respond.
5         But talk to each other and see if there are any
6    of the things you can work through after I leave and
7    avoid actual disputes.  But I'm not averse to helping out
8    at any point along the way to smooth it out.  We're on a
9    very expedited schedule and, obviously, disputes should
10   be resolved sooner rather than later.  Don't let them
11   fester because that just eats up time.  In this case,
12   that's not an appropriate thing.
13        Any questions, Mr. Hume?
14        MR. HUME:  Yes, Your Honor.  Two ministerial
15   questions.  One -- maybe this is more than ministerial --
16   if we're not able to work out the supplementation issues
17   with the Defendant, we may -- you know, the time might be
18   too tight to allow us to get to the Court with a fully
19   briefed motion.
20        THE COURT:  Well, you don't know if there's a
21   problem.  Let's talk it through and we might be able to
22   resolve it.
23        MR. HUME:  What I was going to ask is, to what
24   extent is it permissible, because I think I've heard of
25   it done in other cases, to file our motion for judgment

Palantir Technologies, Inc. v. USA                    7/1/2016

```
 1    on the record that has in parallel -- in tandem with it,

 2    a motion to supplement, because that -- our motion on the

 3    record has a section in it which we would need to try to

 4    keep discrete based on the supplemented material.

 5           THE COURT:  I would much, much rather have you

 6    work it out in advance of that.

 7           MR. HUME:  That's fine, that's fine.

 8           THE COURT:  And I realize -- you know what you

 9    want to do now.  You can start talking to the Defendant

10    about it right now.

11           MR. HUME:  We can start talking -- we can start

12    talking right away.

13           THE COURT:  Yeah, you can talk this afternoon.

14           MR. HUME:  And we might just have to start

15    briefing right away.

16           THE COURT:  Well, you can start talking about

17    it this afternoon.  I can think, predict, what -- even

18    though I hope the -- everybody has an open mind.  I can

19    predict that the general Justice Department approach,

20    obviously, is not supplementation.

21           MR. HUME:  No.

22           THE COURT:  There have been cases in which

23    we've had supplementation.  Whether there's a real bad

24    faith issue here obviously plays into that a little bit.

25    I'm not sure I'm hearing it yet, but I don't have the
```

Palantir Technologies, Inc. v. USA                    7/1/2016

1    facts yet.  So, you know, if that's really an issue here,

2    I don't know.  I mean, that might play into it.  But so

3    far I can't make a judgment on that at all.

4              MR. HUME:  And the second question is, if the

5    Army -- if the parties agree upon an adjustment to the

6    schedule in light of some flexibility shown by the Army,

7    then --

8              THE COURT:  We'll adjust the schedule and send

9    it to you.  And if you have any concerns with it, get the

10   other party on the phone, call in, and we'll talk to you.

11   I don't do ex partes, obviously.  So, if you want to talk

12   to the Court at any point make sure you get the other

13   party on the phone and call in and, you know, we'll --

14             MR. HUME:  Understood.  And then, finally, is

15   the Court reserving -- reserving judgment on whether to

16   conduct a hearing until after you've received the briefs?

17             THE COURT:  Well, we were just sort of talking

18   about that actually.  I think maybe what we'll do -- the

19   answer to that is yes, but I think what we should

20   probably do is pick a date, and if we don't need it,

21   we'll not have it.  So, I was just opening my calendar to

22   look at it.  I think probably we should have the oral

23   argument, assuming we have it -- and you're kind of lucky

24   because I just had a trial cancel out on me, which

25   hopefully will be resolved.  It's not -- again, not a

1   National Courts trial, but it was going to be a long and

2   gray one and I would have had a very hard time to

3   schedule oral argument.  But I think we can do that at

4   this point and -- let's look at -- let's see, the 29th.

5          How about -- let's have the oral argument on --

6   I've got everything but the 29th.

7          (Pause in the proceedings.)

8          THE COURT:  I have a trip that I keep trying to

9   forget that's official business sort of and I really

10  don't want to go and I have avoided putting it on the

11  calendar.

12         Tuesday, August 2nd is probably the only

13  option.  So, you're all local, so 10:30 in the morning on

14  Tuesday, August 2nd.  And if we don't need it, we won't

15  have it.  If either of you feel that you want it, my

16  general practice is to concede to that and allow you to

17  have it if you think it's important.  So, either party

18  could request it certainly and you should make that

19  request in your final reply filing if you're going to

20  make that.

21         So, I guess the first burden is on the

22  Government to start prepping on the administrative

23  record.  The other burden is on the Government -- the DOJ

24  and the Army to see whether there's some flexibility in

25  the schedule.  This will definitely require incredibly

Palantir Technologies, Inc. v. USA                    7/1/2016

1    intense effort from everybody, all parts of the three-
2    part triangle here.  So -- but we'll get it done if we
3    have to.  And, you know, hopefully we'll see more clarity
4    once everybody files their briefs.
5            Any questions, sir?
6            MR. MACGRIFF:  Your Honor, just to clarify, if
7    after speaking with the Army, there is some flexibility
8    in terms of the dates --
9            THE COURT:  Let us know as quickly as possible.
10           MR. MACGRIFF:  Would you prefer us to confer
11   with Plaintiff's counsel and come up with a proposed
12   schedule and send it to you?
13           THE COURT:  Absolutely.
14           MR. MACGRIFF:  Okay.
15           THE COURT:  That would be perfect.
16           MR. MACGRIFF:  All right.
17           THE COURT:  That would be good.  I'll try to --
18   you know, I really do try to accommodate counsel as much
19   as I can, but I also know the limits of what I've got
20   going on and, I mean, this isn't the only case.
21           MR. MACGRIFF:  I understand.
22           THE COURT:  And as I said earlier, I got a bid
23   protest last week also.  So, I'm working on two within a
24   week.  So, you know --
25           MR. MACGRIFF:  I understand.

Palantir Technologies, Inc. v. USA                          7/1/2016

```
 1              THE COURT:  -- we've got to juggle it all, and
 2    I'm sure you all have plenty to juggle as well.  So --
 3              MR. MACGRIFF:  We'll get with the Army as soon
 4    as possible to try to nail that down.
 5              THE COURT:  Yes.  Any other questions?
 6              MR. MACGRIFF:  Not from the Government.
 7              THE COURT:  All right.
 8              MR. HUME:  No, Your Honor.  Thank you very
 9    much.
10              THE COURT:  All right.  Well, good luck to you
11    all, and I look forward to getting your submissions.
12    And, Mr. MacGriff, having worked with you this morning --
13    this afternoon -- I don't even know what time it is
14    having had four hearings today -- I certainly hope you'll
15    stay actively involved in the case and hopefully you -- I
16    don't know whether you become the attorney or record or
17    Ms. Kirchner stays it, but continuity is always a good
18    thing.
19              MR. MACGRIFF:  Yes, ma'am.
20              THE COURT:  All right.  Thank you.
21              MR. MACGRIFF:  Thank you.
22              THE COURT:  Have a good day.
23              MR. HUME:  Thank you, Your Honor.
24              (Whereupon, at 4:30 p.m., the hearing was
25    adjourned.)
```

68

Palantir Technologies, Inc. v. USA                          7/1/2016

```
 1                    CERTIFICATE OF TRANSCRIBER

 2

 3          I, Elizabeth M. Farrell, court-approved

 4   transcriber, certify that the foregoing is a correct

 5   transcript from the official electronic sound recording

 6   of the proceedings in the above-titled matter.

 7

 8

 9

10   DATE: 7/7/2016                s/ Elizabeth M. Farrell

11                                 ELIZABETH M. FARRELL, CERT

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

For The Record, Inc.

(301) 870-8025 - www.ftrinc.net - (800) 921-5555